UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY

| | |
|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY,<br><br>*Plaintiff*,<br><br>v.<br><br>EG MUNOZ CONSTRUCTION, LLC d/b/a EGM BUILDERS, et al.,<br><br>*Defendants*. | No. 22-cv-02414 (MEF)(JBC)<br><br>**OPINION and ORDER** |

                         **Table of Contents**

I.   **Background**
        A.   **The Facts**
        B.   **The Lawsuit**
        C.   **The Motion**
        D.   **The Court's Approach**
II.  **Legal Principles**
III. **Analysis**
        A.   **Liability**
              1.  **Breach**
              2.  **Damages**
        B.   **The Amount Due**
        C.   **Prejudgment Interest**
        D.   **Attorneys' Fees**
IV.  **Conclusion**

                              *   *   *

An insurance company issued a workers' compensation policy to certain construction firms.

The insurance company later sued, claiming the firms did not pay the premiums that were due.

The insurance company now moves for summary judgment.

The motion is granted in part and denied in part.

\* \* \*

## I. Background

### A. The Facts

The relevant facts for now are as follows.

An insurance company[1] issued a workers' compensation policy ("the Policy") to a construction firm and its affiliates.[2]  See Plaintiff's Statement of Facts ¶ 1; Defendants' Response ¶ 1; Dos Santos Deposition at 53:22-25.[3]

The Policy was cancelled due to nonpayment, see Plaintiff's Statement of Facts ¶ 2; Defendants' Response ¶ 2, and the insurance company conducted an audit to determine the final premiums that were due, see Plaintiff's Statement of Facts ¶¶ 4, 7, 8; Defendants' Response ¶¶ 4, 7, 8.

Based on this, the insurance company concluded that the construction firms owed a certain amount in unpaid premiums. See Plaintiff's Statement of Facts ¶ 22; Defendants' Response ¶ 22.

### B. The Lawsuit

The insurance company, referred to from here as "the Plaintiff," sued the construction firms, from here "the Defendants."

---

[1]  Liberty Mutual Fire Insurance Company.

[2]  EG Munoz Construction, LLC d/b/a EGM Builders; EGM E&R Heating & Cooling d/b/a EGM Mechanical; EGM Electric LLC; EGM Plumbing LLC; EGM Fireprotection LLC; and EGM Elite Cabinets and Design LLC.

[3]  The deposition is in Exhibit D to the Motion for Summary Judgment.

The Plaintiff brought breach of contract and book account claims, alleging that the Defendants failed to pay $901,137.24 that they owed in past-due premiums. See Complaint ¶¶ 19-35.

### C. The Motion

Discovery has been completed, and the Plaintiff now moves for summary judgment as to, among other things: (1) the amount allegedly due under the Policy, (2) prejudgment interest, and (3) attorneys' fees and costs. See Motion for Summary Judgment at 9.

The motion became fully submitted around 30 days ago. It is before the Court.

### D. The Court's Approach

After a brief discussion of the general standards for assessing summary judgment motions, see Part II, the Court considers the motion, focusing on liability, see Part III.A, the amount of damages, see Part III.B, prejudgment interest, see Part III.C, and attorneys' fees, see Part III.D.

## II. Legal Principles

Motions for summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Dupree v. Younger, 598 U.S. 729, 737 (2023); Cellco P'ship v. White Deer Twp. Zoning Hearing Bd., 74 F.4th 96, 100 (3d Cir. 2023).

"A factual dispute is material if it might affect the outcome of the suit under the governing law." Canada v. Samuel Grossi & Sons, Inc., 49 F.4th 340, 345 (3d Cir. 2022) (cleaned up); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Such a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party[.]" SodexoMAGIC, LLC v. Drexel Univ., 24 F.4th 183, 203-04 (3d Cir. 2022) (cleaned up).

In assessing a summary judgment motion, "a district court may not make credibility determinations or engage in any weighing of the evidence[.]" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004). Rather, the court must "view the facts in the light most favorable to the non-moving party and [draw] all

reasonable inferences in that party's favor." Canada, 49 F.4th at 345; accord Tolan v. Cotton, 572 U.S. 650, 660 (2014).

The party seeking summary judgment --- here, the Plaintiff --- "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Davis v. Portline Transportes Maritime Internacional, 16 F.3d 532, 536 n.3 (3d Cir. 1994).

## III. Analysis

### A. Liability

The Court must first determine whether it is appropriate to grant summary judgment as to the Defendants' liability on the Plaintiff's breach of contract claim.

The elements of a breach of contract claim under New Jersey law[4] are: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007) (New Jersey law); accord, e.g., Goldfarb v. Solimine, 245 N.J. 326, 338 (2021).

As to the first element, the parties do not dispute the existence of the Policy or its terms. See Plaintiff's Statement of Facts ¶ 1; Defendants' Response ¶ 1. And as to the fourth element, the Defendants do not make any allegations that the Plaintiff failed to meet its Policy obligations. See Plaintiff's Statement of Facts ¶¶ 2-7; Defendants' Response ¶¶ 2-7; Opposition Brief at 3.

---

[4] The Complaint does not specify what state's law applies. But the parties' briefs broadly assume that New Jersey applies. See, e.g., Motion for Summary Judgement at 6-9; Opposition Brief at 3; Reply Brief at 4-5. And "[w]here parties' briefs assume that a particular forum's law controls, such implied consent . . . is sufficient to establish choice of law." Navigators Specialty Ins. Co. v. Citizens Ins. Co. of Am., 2024 WL 3287848, at *2 (D.N.J. July 3, 2024) (compiling cases). Therefore, the Court applies New Jersey law.

4

Focus, then, on what is left: the evidence as to the second element (breach) and the third element (damages).

### 1. **Breach**

The Policy provided that the Defendants would "pay all premium when due," and that "[t]he final premium will be determined after [the Policy] ends." Policy at 21.[5]

The Plaintiff offers affirmative proof that the Defendants failed to make payments toward the final premiums that were due and owing. See Gauthier Declaration ¶¶ 11-13.

This evidence is not meaningfully disputed.

If anything, it is admitted to an extent --- the Defendants' Chief Financial Officer testified, though in tentative fashion, that the Defendants calculated they owed the Plaintiff over half a million dollars in unpaid premiums. See Dos Santos Deposition at 7:18, 59:7-14.

In short: the Plaintiff's evidence is that the Defendants failed to make premium payments they needed to, and the Defendants do not dispute this --- indeed, they veer close to admitting it.

### 2. **Damages**

As to the third element of a New Jersey breach of contract claim, the Defendants argue that the Plaintiff has not been damaged --- because during the relevant period it did not suffer any loss, or pay out on any Policy claims. See Opposition Brief at 3.

But that is besides the point.

The Plaintiff's claim is not that it had to make certain outlays on behalf of the Defendants. Rather, it is that it did not receive premium payments from the Defendants that it was contractually entitled to. See Motion for Summary Judgment at 1; Complaint ¶ 1. And not receiving such payments counts as damage. See Wingate Inns Int'l, Inc. v. Universal Hosp. Sols., LLC, --- F. Supp. 3d ---, ---, 2024 WL 4262488, at *4 (D.N.J. Sept. 23, 2024) (applying New Jersey breach of contract law, and holding that "[n]onpayment of money that is owed is damaging").

---

[5] The Policy is Exhibit A to the Motion for Summary Judgment.

### B. The Amount Due

There is sufficient and undisputed evidence that the Defendants are liable for breach of contract as to the Policy, see Part III.A --- and the Plaintiff also moves for summary judgment as to the precise amount of past-due premiums it is entitled to as a result of that breach. See Motion for Summary Judgment at 9.

The Plaintiff asserts that the Defendants owe $901,137.24 in premiums. See id.

To work out the amount due, the Policy allowed the Plaintiff to audit the Defendants' payroll records. See Policy at 21; see also Gauthier Declaration ¶ 4.

And the Policy included agreed-upon formulae that the Plaintiff was to use to calculate the premium owed based on the audit results. See Policy at 27-30; Plaintiff's Statement of Facts ¶¶ 5-6; Defendants' Response ¶¶ 5-6.

It is undisputed that the Plaintiff conducted a physical audit of the Defendants' records on December 8, 2022. See Plaintiff's Statement of Facts ¶ 8; Defendants' Response ¶ 8; see also Motion for Summary Judgment, Exhibit B; Brazell Declaration ¶ 12.[6]

And there is evidence that, based on the results of that audit, the Plaintiff calculated the premiums that were owed by using the formulae laid out in the Policy. See Motion for Summary Judgment, Exhibit C; Gauthier Declaration ¶¶ 9-12. This yielded $901,137.24 in remaining premiums due. See Motion for Summary Judgment, Exhibit C; Gauthier Declaration ¶ 11-12.

The piece of evidence that might potentially suggest some dispute as to the precise amount that was due and owing is the deposition testimony of the Defendants' Chief Financial Officer.

---

[6] The audit report indicates that EGM E&R Heating & Cooling had a payroll exposure of $1,494,909. See Motion for Summary Judgment, Exhibit B at 6. However, the rest of the Plaintiff's papers provide a payroll exposure of $1,494,911. See Plaintiff's Statement of Facts ¶ 19; Gauthier Declaration ¶ 10; Brazell Declaration ¶ 12. A payroll discrepancy of this kind can yield only a non-material issue --- a diminution in the premiums due that is measured in cents.

6

The CFO testified that the Defendants had calculated a different amount in premiums due --- $580,527, as opposed to $901,137.24. See Dos Santos Deposition at 59:7-14. But when asked how the Defendants arrived at the $580,527 figure, she responded that "we have to review the numbers and give you a better answer for that. We have to calculate the numbers again." Id. at 59:12-14. The Defendants have not provided further information or calculations. See Plaintiff's Statement of Facts ¶ 25; Defendants' Response ¶ 25. And the Chief Financial Officer went on at her deposition to suggest that she was "not sure" that $580,527 was the amount owed. Dos Santos Deposition at 59:17.

This is not enough. To defeat a properly-made summary judgment motion, "[t]he non-moving party must . . . 'designate specific facts' in the record 'showing that there is a genuine issue for trial.'" United States ex rel. Greenfield v. Medco Health Sols., Inc., 880 F.3d 89, 93 (3d Cir. 2018) (quoting Celotex, 477 U.S. at 324).

But there are no "specific facts" that have been "designate[d]" by the Defendants and put before the Court --- no evidence to dispute the $901,137.24 number; no evidence as to why $580,527 was the right figure (as the CFO seemed to suggest); and no evidence as to why $580,527 might not have been the right figure (as the CFO perhaps also seemed to suggest).

Rather, the CFO expressed some tentative doubt as to the Plaintiff's $901,137.24 calculation. But the CFO's statement is highly conclusory, and amounts to little more than a suspicion. The reason: it stands alone. The CFO provided no information or analysis as to what might be wrong with the $901,137.24 figure. And there is no other relevant evidence that has been put before the Court. There is no competing audit report, for example, or payroll records, and there is no testimony from someone who worked through the numbers and came to a different conclusion than the Plaintiff's.[7]

"The non-moving party must oppose the motion and, in doing so, . . . must set forth specific facts showing that there is a

---

[7] Indeed, the CFO forthrightly noted that her suggestion of a difficulty with the numbers needed buttressing. The Defendants would "review the numbers" and "calculate the[m] . . . again," she said, to come to a "better answer." Dos Santos Deposition at 59:12-14. But that work was apparently not done. See Plaintiff's Statement of Facts ¶ 25; Defendants' Response ¶ 25.

7

genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice." D.E. v. Cent. Dauphin Sch. Dist., 765 F.3d 260, 268-69 (3d Cir. 2014) (cleaned up). But that is what the CFO's testimony supplies, and no other "specific facts" have been put before the Court.[8]

The Plaintiff's motion for summary judgment as to the premium due is granted, in the amount of $901,137.24.

### C. Prejudgment Interest

The Plaintiff also argues that it is entitled to prejudgment interest. See Motion for Summary Judgment at 9.

But the Plaintiff points to no on-point Policy provisions as to interest.

As to background legal principles, under New Jersey law the award of prejudgment interest in a breach of contract action such as this one is a matter of discretion for the trial court, to be exercised based on equitable principles. See Cnty. of Essex v. First Union Nat. Bank, 186 N.J. 46, 61 (2006).

The Court declines to require prejudgment interest here, particularly in the absence of guidance from the parties as to

---

[8] Two points. First, note that the Defendants' Chief Executive Officer submitted an affidavit. It suggests that the Defendants may not have developed a meaningful counterargument as to the amount owed under the Policy because they had been relying on the advice of an external insurance broker. Accordingly, internal personnel were not able to effectively respond to the Plaintiff's audit results. See Espinosa Affidavit ¶¶ 9-11. But it is not clear why the Defendants did not subpoena records or witnesses from the insurance broker. And in any event, the Chief Executive Officer's affidavit is an explanation for why the Defendants did not provide the required "specific facts." But that is not a substitute for such facts themselves. Second, one word in the CEO's affidavit ("[t]hereafter," Espinosa Affidavit ¶ 8) may potentially be taken to suggest that the Plaintiff conducted another, inaccurate audit after the audit that took place on December 8, 2022. But this point is not developed or supported by evidence. And the undisputed evidence is that the Plaintiff's calculations relied on the payroll figures from the December 8, 2022, audit. See Motion for Summary Judgment, Exhibit C at 5; Exhibit B.

the appropriate amount to be assessed or any description of case-specific reasons for requiring an interest payment.

The motion for summary judgment as to prejudgment interest is denied.

### D. Attorneys' Fees

The Plaintiff also moves for summary judgment as to the award of attorneys' fees and costs.

"In general, New Jersey disfavors the shifting of attorneys' fees." Litton Indus., Inc., v. IMO Indus., Inc., 200 N.J. 372, 385 (2009). "[A] prevailing party can recover those fees if they are expressly provided for by statute, court rule, or contract." Packard-Bamberger & Co., Inc. v. Collier, 167 N.J. 427, 440 (2001); see generally Marshall Invs. Corp. v. Krones A.G., 572 Fed. App'x 149, 152 n.3 (3d Cir. 2014) ("The American Rule provides that litigants are responsible for their own attorney fees unless a contract or statute expressly states otherwise.").

Here, the Plaintiff does not point to any Policy provisions as to attorneys' fees and costs, or any statute or court rule.

Therefore, the motion for summary judgment as to attorneys' fees and costs is denied.

## IV. Conclusion

For the reasons set forth above, the Plaintiff's motion for summary judgment as to the breach of contract claim is granted in part and denied in part. The Defendants are liable to the Plaintiff for $901,137.24.[9]

IT IS on this 31st day of October, 2024, so ORDERED.

Michael E. Farbiarz, U.S.D.J.

---

[9] The Plaintiff also seeks these same damages under its book account claim, which is based on the same allegations as the breach of contract claim. See Complaint ¶¶ 19-37. In light of its disposition of the breach of contract claim, the Court does not reach the Plaintiff's motion as to the book account claim.